# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON DIVISION

|  |  |
|---|---|
| CYNTHIA KANE,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>NOVO NORDISK A/S and<br>NOVO NORDISK INC.,<br><br>　　　　　　　Defendants. | Civil Action No.: 3:24-cv-11384-ZNQ-RLS<br><br>Hon. Zahid N. Quraishi, U.S.D.J.<br>Hon. Rukhsanah L. Singh, U.S.M.J. |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND MOTION FOR A
## MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e)

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

    A.  FDA Approved Ozempic® as Safe and Effective in 2017 .......................... 2

    B.  Overview of NAION ................................................................................... 3

    C.  Overview of Plaintiff's Allegations ........................................................... 4

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT .......................................................................................................................... 5

    I.  Plaintiff's Design-Defect Claims (Counts IX and X) Are Barred by Federal Preemption. 5

    II.  Plaintiff's Fraud-Based and Misrepresentation Claims (Counts V, VI, VII, VIII) Are Insufficiently Pleaded Under Rule 9(b) ..................................................... 9

    III.  Plaintiff's Remaining State-Law Claims Fail Under Arkansas Law ................................ 12

        A.  Plaintiff's Breach of Express and Implied Warranty Claims (Counts III and IV) Fail to   Satisfy the Pre-Suit Notice Requirement Under Arkansas Law .......................... 12

        B.  Plaintiff Fails to Allege an Express Warranty (Count III) ........................................ 13

        C.  Plaintiff's Negligent Misrepresentation Claim (Count VII) Is Not Recognized Under Arkansas Law .................................................................................... 14

        D.  The Learned Intermediary Doctrine Forecloses Plaintiff's Failure-to-Warn Claims Premised on a Duty to Warn Plaintiff Directly (Counts I, II, XI, XII) ...................... 14

        E.  Plaintiff's Negligent Undertaking Claim Is Not Recognized Under Arkansas Law (Count XII) ............................................................................................. 15

    IV.  The Complaint Should Be Dismissed to Permit Plaintiff to Clarify Ambiguities That Hinder a Choice of Law Analysis ..................................................................... 16

CONCLUSION ..................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Adams v. Wacaster Oil Co.*,
   98 S.W.3d 832 835 (Ark. App. 2003)...................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................5

*Boehm v. Lilly & Co.*,
   No. 10-CV-159, 2012 WL 12848432 (E.D. Ark. Oct. 4, 2012) ..........................................2, 14

*United States ex rel. Bookwalter v. U.P.M.C.*,
   946 F.3d 162 (3d Cir. 2019)....................................................................................................10, 11

*In re Burlington Coat Factory*,
   114 F.3d 1410 (3d Cir. 1997).................................................................................................10

*Centocor, Inc. v. Hamilton*,
   372 S.W.3d 140 (Tex. 2012)...................................................................................................15

*Curtis Lumber Co. v. La. Pac. Corp.*,
   618 F.3d 762 (8th Cir. 2010) .................................................................................................14

*Ehlis v. Shire Richwood, Inc.*,
   367 F.3d 1013 (8th Cir. 2004) ...............................................................................................15

*Fahnbulleh v. Trans Union, LLC*,
   No. 23-CV-21591, 2024 WL 4441754 (D.N.J. Oct. 7, 2024) ...............................................16

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*,
   751 F.3d 150 (3d Cir. 2014)....................................................................................................7, 8

*Garfield v. Shutterfly, Inc.*,
   857 F. App'x 71 (3d Cir. 2021) ...............................................................................................9, 10

*Green v. Bayer Corp.*,
   522 F. Supp. 3d 492 (E.D. Ark. 2021)....................................................................................13

*Gustavsen v. Alcon Labs., Inc.*,
   903 F.3d 1 (1st Cir. 2018)........................................................................................................7

*Hall v. Bristol-Myers Squibb Co.*,
    No. 06-CV-5203, 2009 WL 5206144 (D.N.J. Dec. 30, 2009) ................................11

*Hinton v. Bos. Sci. Corp.*,
    714 F. Supp. 3d 26 (D. Mass. 2024) ................................................................2, 13

*Howard v. Bayer Corp.*,
    No. 10-CV-1662, 2011 WL 13224118 (E.D. Ark. July 22, 2011) ........................13

*Hufford v. Johnson & Johnson*,
    No. 22-CV-00196, 2023 WL 3977585 (E.D. Ark. June 13, 2023).........................13

*Ignacuinos v. Boehringer Ingelheim Pharms. Inc.*,
    8 F.4th 98 (2d Cir. 2021) .....................................................................................7

*James v. City of Wilkes-Barre*,
    700 F.3d 675 (3d Cir. 2012)..................................................................................5

*Kowalski v. Rose Drugs of Dardanelle, Inc.*,
    378 S.W.3d 109 (Ark. 2011) ...............................................................................14

*Larkin v. Pfizer, Inc.*,
    153 S.W.3d 758 (Ky. 2004) ................................................................................15

*Lutz v. Portfolio Recovery Associates, LLC*,
    49 F.4th 323 (3d Cir. 2022) ..................................................................................5

*Madden v. Mercedes-Benz USA, Inc.*,
    481 S.W.3d 455 (Ark. App. 2016)........................................................................13

*Mutual Pharm. Co., Inc. v. Bartlett*,
    570 U.S. 472 (2013)................................................................................5, 6, 7, 8

*P.V. v. Camp Jaycee*,
    962 A.2d 453 (2008) ...........................................................................................12

*Perez v. Wyeth Laboratories Inc.*,
    734 A.2d 1245 (N.J. 1999)...................................................................................15

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011)..........................................................................................1, 6

*S. Cty., Inc. v. First W. Loan Co.*,
    871 S.W.2d 325 (Ark. 1994).............................................................................2, 14

*Schmidt v. Ford Motor Co.*,
    972 F. Supp. 2d 712 (E.D. Pa. 2013) ..................................................................12

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018)....................................................................10, 11

*Stube v. Pfizer Inc.*,
    446 F. Supp. 3d 424 (W.D. Ark. 2020)..............................................2, 14, 15

*Robinson ex rel. T.R. v. Eli Lilly & Co.*,
    No. 17-CV-338, 2018 WL 4039703 (E.D. Ky. Aug. 23, 2018) ................9

*Thomas v. Indep. Tp.*,
    463 F.3d 285 (3d Cir. 2006)..........................................................................16

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 F. App'x 82 (3d Cir. 2015) ....................................................................9

*Twardzik v. HP Inc.*,
    No. 22-2650, 2023 WL 5770999 (3d Cir. Sept. 7, 2023) ......................9

*Watts v. Medicis Pharm. Corp.*,
    365 P.3d 944 (Ariz. 2016).............................................................................15

*West v. Searle & Co.*,
    806 S.W.2d 608 (Ark. 1991).................................................................14, 15

*Williams v. Mozark Fire Extinguisher Co.*,
    888 S.W.2d 303 (Ark. 1994).........................................................................12

*Wyeth v. Levine*,
    555 U.S. 555 (2009).................................................................................7, 8

*Yates v. Ortho-McNeil-Janssen Pharm., Inc.*,
    808 F.3d 281 (6th Cir. 2015) ...................................................................7, 8

## Statutes, Rules, and Regulations

21 C.F.R. § 314.70.........................................................................................7, 8

Ark. Code Ann. § 4-2-313(1)(a) ...................................................................13

Ark. Code Ann. § 4-2-607 .............................................................................12

Ark. Code Ann. § 4-2-607(3)(a) ...............................................................2, 12

Fed. R. Civ. P. 9 ..................................................................................... *passim*

Fed. R. Civ. P. 12 ....................................................................................5, 14, 16

Defendants Novo Nordisk A/S and Novo Nordisk Inc. (together "Novo Nordisk") move to dismiss Plaintiff Cynthia Kane's Complaint and for a more definite statement.

## INTRODUCTION

The Food and Drug Administration ("FDA") approved Ozempic® (semaglutide) nearly a decade ago. *See* Complaint, Dkt. 1 (hereinafter "Compl.") ¶ 68. Since then, Ozempic® has revolutionized the treatment of type 2 diabetes, and the medicine's safety and efficacy has been established in dozens of clinical trials.

In a twelve-count Complaint, Plaintiff, a resident of Arkansas, brings this product liability action alleging that Novo Nordisk failed to adequately warn of the risk of Non-Arteritic Anterior Ischemic Optic Neuropathy ("NAION").[1] Plaintiff also alleges that Novo Nordisk defectively designed Ozempic®, engaged in unspecified fraud and misrepresentation, and violated ill-defined express and implied warranties. All of Plaintiff's claims fail for the following reasons:

**Design-Defect Claims (Counts IX and X)**: Plaintiff's design-defect claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). Plaintiff's design-defect claims turn on the allegation that Novo Nordisk should have designed Ozempic® in a different and safer manner. But FDA regulations prohibit Novo Nordisk from making any "major changes" to prescription medicines—including any changes to their formulation or active ingredients—without FDA's express prior approval. Thus, Plaintiff's design-defect claims are preempted. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623-24 (2011).

**Fraud & Misrepresentation Claims (Counts V, VI, VII, VIII)**: Plaintiff's fraud and misrepresentation claims fail to satisfy Rule 9(b)'s heightened pleading standard. Courts frequently dismiss fraud-based claims in the pharmaceutical context where, as here, the plaintiff's

---

[1] For the Court's information, NAION is a condition caused by reduced blood flow to the optic nerve that can lead to vision loss.

conclusory allegations claim only that the defendant generally misrepresented the product as safe and effective. To the extent any remaining misrepresentation claims are not subject to Rule 9(b), they should still be dismissed, because Arkansas law does not recognize a cause of action for negligent misrepresentation. *See S. Cty., Inc. v. First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994); *see also Stube v. Pfizer Inc.*, 446 F. Supp. 3d 424, 441 (W.D. Ark. 2020).

**Express & Implied Warranty Claims (Counts III, IV)**: The warranty claims fail because Plaintiff has not alleged facts to suggest she meets the pre-suit notice requirement for asserting warranty claims under Arkansas law. Ark. Code Ann. § 4-2-607(3)(a); *Hinton v. Bos. Sci. Corp.*, 714 F. Supp. 3d 26, 29 (D. Mass. 2024) (applying Arkansas law).

**Strict Liability & Negligence-Based Warnings Claims (Counts I, II, XI, XII)**: Under Arkansas law, pharmaceutical manufacturers do not have a duty to warn patients or the general public of the risks of prescription medications. Novo Nordisk's duty to warn runs only to Plaintiff's physician, not to Plaintiff or the public. To the extent Plaintiff's claims are based on a duty that does not exist, they are fatally deficient under the Arkansas learned intermediary doctrine. *Boehm v. Lilly & Co.*, No. 10-CV-159, 2012 WL 12848432, at *3 (E.D. Ark. Oct. 4, 2012), *aff'd*, 747 F.3d 501 (8th Cir. 2014) (citing *Hill v. Searle Labs.*, 884 F.2d 1064, 1070 (8th Cir. 1989) (applying Arkansas law)).

For these reasons, this Court should dismiss Plaintiff's failure-to-warn claims in part and the remaining claims in their entirety.

## FACTUAL BACKGROUND

### A.    FDA Approved Ozempic® as Safe and Effective in 2017.

Ozempic® is a once-weekly prescription medicine used to treat type 2 diabetes. Compl. ¶ 67. Ozempic® is part of a class of medicines known as glucagon-like peptide-1 receptor agonists (GLP-1RAs for short). *Id.* ¶ 48. GLP-1RA medicines have been on the market for nearly two

decades and, in that time, have revolutionized the treatment of type 2 diabetes and obesity. *Id.* ¶ 46. The FDA first approved Ozempic® in 2017 as "an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus." *See* Ozempic® Label, dated Oct. 2022, at 1 (attached as Ex. A to the Declaration of Raymond M. Williams). Ozempic® also is indicated "to reduce the risk of major adverse cardiovascular events in adults with type 2 diabetes mellitus and established cardiovascular disease." *Id.* Before its approval, the safety and efficacy of the medicine was evaluated in seven phase 3 clinical trials in which 3,150 patients were treated with Ozempic®. *See id.* at 6.[2] The safety and efficacy profile of the medicine is reflected in its FDA-approved product labeling, which specifically warns of the risk of vision changes in patients taking Ozempic®. *Id.* at 25, 28. Further, since its initial approval, the product label for Ozempic® has been reviewed by FDA and updated numerous times.

## B. Overview of NAION.[3]

NAION is the most common cause of sudden optic nerve-related vision loss.[4] The incidence rate for disease in those over 50 is 2.3 to 10.2 per 100,000.[5] Risk factors for NAION overlap with those often relevant in diabetes patients, including age, diabetes, hypertension, hyperlipidemia, and coronary heart disease, among others.[6] GLP-1RA medicines are not an

---

[2] Novo Nordisk attaches the October 2022 Ozempic® label because that appears to be the relevant label based on the allegations in the Complaint. Compl. ¶ 26.

[3] Novo Nordisk provides the information in this Section, as well as the citations in Footnotes 4 to 8, for the Court's awareness rather than to be considered on a motion to dismiss.

[4] Dean Cestari et al., *Demographic, Systemic, and Ocular Factors Associated with Nonarteritic Anterior Ischemic Optic Neuropathy*, 123 Ophthalmology 2446, 2446-55 (2016), https://tinyurl.com/35fvkynp; *see also* Annie Stuart, EyeNet Mag., *Risk Factors for NAION Identified* (Dec. 1, 2016), https://tinyurl.com/2d76p96r (Magazine of the American Academy of Ophthalmology).

[5] Kevin Yu et al., EyeNet Mag., *NAION: Diagnosis and Management* (Aug. 1, 2022), https://tinyurl.com/mhzhapya.

[6] Bing Liu et al., *Risk Factors for Non-Arteritic Anterior Ischemic Optic Neuropathy: A Large-Scale Meta-Analysis*, 8 Frontiers in Med. 1, 8 (2021), https://tinyurl.com/3svr5hr4.

established risk factor for NAION.  Clinical trial data did not reveal an increased risk for medication-related NAION development.[7]  Following clinical trials, the first study reporting any potential association between GLP-1RA medicines and NAION was published online in July 2024, the same month Plaintiff stopped taking Ozempic®.[8]  Subsequent studies have reported inconsistent results.

### C.    Overview of Plaintiff's Allegations

Plaintiff is a resident of Arkansas.  Compl. ¶ 25.  She alleges that she used Ozempic® from October 2022 to July 2024.  *Id*. ¶ 26.  She asserts that she developed "NAION and its sequelae," including headaches and vision loss, after using Ozempic®.  *Id.* ¶¶ 27-28.  The remainder of the Complaint contains only conclusory legal allegations; for example, she claims that Defendants breached their duty of care because Novo Nordisk "knew or should have known" of the risk of NAION with use of Ozempic®.  *Id.* ¶¶ 75, 287.  Plaintiff does not identify when she developed NAION or where she was residing when she developed NAION.  Nor does she specify the state where she was prescribed and used Ozempic®.

Plaintiff brings twelve causes of action: (1) Failure-to-Warn – Negligence; (2) Failure-to-Warn – Strict Liability; (3) Breach of Express Warranty; (4) Breach of Implied Warranty; (5) Fraudulent Concealment/Fraud by Omission; (6) Fraudulent/Intentional Misrepresentation; (7) Negligent Misrepresentation/Marketing; (8) Strict Product Liability Misrepresentation/

---

[7] Compl. ¶ 78 n.50 (citing G.A. Silverii, et al., *Glucagon-like Peptide 1 (GLP1) Receptor Agonists and Risk for Ischemic Optic Neuropathy: A Meta-Analysis of Randomised Controlled Trials*, 27 Diabetes Obes Metab. 1005, 1008 (2025) ("Our meta-analysis failed to detect a significant detrimental effect of GLP1-RA therapy on ischemic optic neuropathy in randomised clinical trials.")).

[8] Jimena Hathaway et al., *Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide*, 142 JAMA Ophthalmol. 732, 738 (2024), https://tinyurl.com/y2xzbwnh. ("This study is the first, to our knowledge, to report an association between semaglutide and NAION, although the design of our study did not enable query into a causal relationship between the two.").

Marketing; (9) Negligent Design; (10) Strict Liability Design-Defect; (11) Negligence; and (12) Negligent Undertaking. She is seeking compensatory, economic, and punitive damages.

## LEGAL STANDARD

A district court must dismiss counts that fail to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). When evaluating the sufficiency of a complaint, factual allegations are scrutinized to determine if they are plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Lutz v. Portfolio Recovery Associates, LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the court identifies the elements needed to set forth a particular claim. *Id.* Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, with respect to well-pled factual allegations, the court should accept those allegations as true and construe reasonable inferences in the plaintiff's favor. *Id.* at 328. The court must disregard legal conclusions and conclusory statements in the complaint. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). When alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

## ARGUMENT

**I.    Plaintiff's Design-Defect Claims (Counts IX and X) Are Barred by Federal Preemption.**

Plaintiff's design-defect claims—one sounding in negligence (Count IX) and one in strict liability (Count X)—are barred by federal preemption, as any changes to the formulation or dosage of Ozempic® would require FDA approval. *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472,

490 (2013). Plaintiff's design-defect claims present a pure legal issue on which the Supreme Court has spoken directly: Where "state-law design-defect claims . . . place a duty on manufacturers to render a drug safer by either altering its composition or altering its labeling," those laws "are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition." *Id*. Because Novo Nordisk could not unilaterally change the design of its FDA-approved pharmaceutical product, Plaintiff's design-defect claims are preempted as a matter of law.

Under the Supremacy Clause, a claim is preempted if, among other things, "it is impossible for a private party to comply with both state and federal law." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624 (2011) (internal quotation marks omitted). As the Supreme Court has explained, in the pharmaceutical context, the touchstone of impossibility preemption is whether the defendant can ***unilaterally*** take action to satisfy state law duties without the prior approval of FDA: "[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." *Id.* at 623-24.

The Supreme Court has applied this principle to bar a design-defect claim against a pharmaceutical company, holding that "state-law design-defect claims . . . that place a duty on manufacturers to render a drug safer by either altering its composition or altering its labeling are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition." As the Court in *Bartlett* explained: "Once a drug—whether generic ***or brand-name***—is approved, the manufacturer is prohibited from making any major changes to the 'qualitative or quantitative *formulation* of the drug product, including active ingredients, or in the specifications provided in the approved application.'" 570 U.S. at 477 (quoting 21 C.F.R. § 314.70(b)(2)(i), which currently refers to "inactive" ingredients) (emphasis added).

A manufacturer is barred by federal law from making a unilateral major change to an FDA-approved medication. Section 314.70(b)(1) defines major changes to include a broad array of modifications, including "any change in the drug substance, drug product, production process, quality controls, equipment, or facilities that has a substantial potential to have an adverse effect on the identity, strength, quality, purity, or potency of the drug product." Section 314.70(b)(2) also lists a separate category of changes that FDA has pre-determined are "major changes." Among these enumerated major changes are any changes to the "formulation of the drug product, including inactive ingredients." *Id.* § 314.70(b)(2)(i).

Although *Bartlett* involved a generic manufacturer, its holding and rationale apply equally to brand manufacturers. These companies likewise are prohibited from changing an FDA-approved product's design without obtaining FDA's prior approval. *See, e.g.*, *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 289 (6th Cir. 2015) (holding plaintiff's design-defect claim against brand manufacturer was preempted); *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 10-12 (1st Cir. 2018) (holding plaintiffs' state-law claims against brand and generic manufacturers were preempted because changing the product bottle to dispense a different amount of medication was a major change that required FDA pre-approval); *Ignacuinos v. Boehringer Ingelheim Pharms. Inc.*, 8 F.4th 98, 105 (2d Cir. 2021) (holding plaintiffs' state-law claims against a brand manufacturer were preempted because a change in (1) the design of the inhaler to release a different amount of medication per puff, or (2) the amount of medication in each cartridge would be a major change that required FDA pre-approval).[9]

---

[9] The Third Circuit has said, in dicta, that the Supreme Court in *Wyeth* held that design-defect claims are not preempted as to brand manufacturers. *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 159 n.20 (3d Cir. 2014). But the claims in *Wyeth* were for failure-to-warn, not design-defect. *Wyeth v. Levine*, 555 U.S. 555, 558 (2009). The court's characterization in *Fosamax* appears to flow from a facet of some states' laws that permit design-

Those principles foreclose Plaintiff's design-defect claims here.  Plaintiff alleges that Novo Nordisk was negligent in "[d]esigning a product where the benefits was greatly outweighed by the risks, including NAION and its sequelae."  Compl. ¶ 462.  She alleges that Ozempic® was "defective" in that "[t]he design or formulation of Ozempic failed to take into consideration the proper dosage that could avoid NAION and its sequelae."  Compl. ¶ 475.  She contends that "[t]here was a safer, economically feasible alternative design or formulation for Ozempic that [Novo Nordisk] could have used."  *Id.*  In sum, Plaintiff's design-defect claims hinge on the premise that Novo Nordisk should have designed the semaglutide molecule in Ozempic® differently.  These design-defect claims would require a "major change" to an FDA-approved pharmaceutical product, *see* 21 C.F.R. § 314.70(b)(1)-(2), which runs squarely into FDA regulations prohibiting manufacturers from "unilaterally" changing the design, formulation, or chemical composition of an approved medication without FDA's approval.  *Bartlett*, 570 U.S. at 490.  As such, Novo Nordisk cannot independently take the action (*i.e.*, engage in a product redesign) that Plaintiff claims state law requires.

Because federal law prohibits manufacturers like Novo Nordisk from unilaterally making a "major change" to an FDA-approved medication, this Court should dismiss Plaintiff's design-defect claims (Counts IX and X) as barred by conflict preemption.  *See, e.g.*, *Yates*, 808 F.3d at

---

defect claims to be grounded in the product's formulation *or* labeling.  *See Bartlett*, 570 U.S. at 482.  *Bartlett* makes clear that manufacturers may not alter the formulation of an FDA-approved product, refers to "generic **or brand name**" medicines expressly, and is consistent with the regulatory reality that a brand manufacturer has no more ability to unilaterally change an approved drug design than a generic manufacturer.  The complete inability of both generic and brand-name manufacturers to change a drug's formulation distinguishes design-defect challenges here from challenges to product labeling in *Fosamax* where brand manufacturers may unilaterally change the label in the limited circumstances permitted by the Changes Being Effected regulations.  *See Wyeth*, 555 U.S. at 573.  This motion does not address preemption as it relates to Plaintiff's failure-to-warn claims, and focuses only on Plaintiff's *design-defect* claims challenging the medicines' formulation, which the Supreme Court in *Bartlett* addressed directly.

300 (holding plaintiff's design-defect claims against a brand manufacturer were preempted by federal law); *Robinson ex rel. T.R. v. Eli Lilly & Co.*, No. 17-CV-338, 2018 WL 4039703, at *6 (E.D. Ky. Aug. 23, 2018) (explaining that preemption applied where plaintiff alleged that brand manufacturer should have changed the composition of the drug, but that change was rendered impossible because there was no way to "independently [make] such fundamental changes to [the drug's] formula").

## II.    Plaintiff's Fraud-Based and Misrepresentation Claims (Counts V, VI, VII, VIII) Are Insufficiently Pleaded Under Rule 9(b)

Plaintiff's fraud-based and misrepresentation claims (Count V, VI, VII, VIII) are subject to Rule 9(b)'s heightened pleading standard to the extent they depend on allegations of fraud, which Plaintiff's conclusory allegations fail to satisfy.  The Third Circuit holds that Rule 9(b) applies whenever claims sound in fraud—*i.e.*, whenever claims are premised on allegations of fraud—regardless of whether the word "fraud" appears in the title of the claim.  *See Garfield v. Shutterfly, Inc.*, 857 F. App'x 71, 79 (3d Cir. 2021) (courts "must make an assessment of the particular claim to determine whether acts of fraud on the part of the defendants form the basis for the claim against them" (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006))).  As such, the Third Circuit has applied Rule 9(b) to fraudulent concealment and all forms of misrepresentation.  *See, e.g.*, *Twardzik v. HP Inc.*, No. 22-2650, 2023 WL 5770999, at *2 (3d Cir. Sept. 7, 2023); *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) (explaining that "all of Plaintiffs' claims alleging fraudulent activity—*i.e.*, Plaintiffs' claims for intentional and negligent misrepresentation, unjust enrichment and an injunction—must be pled with sufficient particularity under Rule 9(b)") (non-precedential) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996)).

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (quoting Fed. R. Civ. P. 9(b)). Although the elements of fraud-based claims vary, a federal plaintiff "must allege 'the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007), *superseded by statute on other grounds*). In other words, a plaintiff must describe "the who, what, when, where, and how" of the alleged fraud. *United States ex rel. Bookwalter v. U.P.M.C.*, 946 F.3d 162, 176 (3d Cir. 2019). "Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory*, 114 F.3d 1410, 1418 (3d Cir. 1997). To avoid Rule 9(b), Plaintiff must plead carefully and "expressly disavow[] fraud in their negligence claims and carefully separate[] . . . fraud claims from negligence claims" so that "the fraud counts do not 'contaminate' the negligence counts." *Garfield*, 857 F. App'x 79 (citing *Suprema Specialties*, 438 F.3d at 272-73).

Here, Plaintiff's allegations in support of her fraud-based and misrepresentation claims fail to meet Rule 9(b)'s heightened pleading standard. The Complaint offers merely vague and non-specific boilerplate allegations regarding alleged fraud, such as: "Defendants knew or should have known that Ozempic was unreasonably dangerous because of the increased risk of NAION." *See* Compl. ¶ 397. It goes on to allege that "Defendants had a duty to disclose material information about Ozempic . . . namely that Ozempic is causally associated with increased risk of NAION," *id.* ¶ 398, but that "Defendants consciously and deliberately withheld and concealed . . . this material information," *id.* ¶ 399. Plaintiff also alleges that "Defendants made material misrepresentations . . . regarding the safety and/or efficacy of Ozempic," *id.* ¶ 418, and

"represented affirmatively" that "Ozempic was . . . safe and effective . . . despite being aware of increased risks of NAION," *id.* ¶ 419. The Complaint does not plead the requisite level of factual detail under Rule 9(b) to put Novo Nordisk on notice of the particular fraud or misrepresentation being alleged. Nor does Plaintiff identify what "material information" on the alleged risks of NAION Defendants "deliberately withheld and concealed." *Id.* ¶ 399.

The Complaint does not identify who purportedly made the unidentified representations or omissions to Plaintiff or her healthcare providers. *See id.* ¶¶ 394-424. Plaintiff does not allege the "where" of any fraud that had occurred. The Complaint identifies no specific documents in which Novo Nordisk made any misstatements. Rather, the Complaint vaguely alleges that fraudulent statements were transmitted through "advertising campaigns, labeling materials, print advertisements, commercial media, and marketing." *Id.* ¶ 428. But Plaintiff's references to unspecified advertisements do not satisfy Rule 9(b). *Hall v. Bristol-Myers Squibb Co.*, No. 06-CV-5203, 2009 WL 5206144, at *9 (D.N.J. Dec. 30, 2009) ("Plaintiffs fail to identify any specific advertisements Plaintiff [or the decedent] viewed, how they were misled by these advertisements, how these advertisements affected their prescriptions for [the medication] and how these advertisements caused any of their injuries."). Plaintiff makes no effort to allege fraud with any precision under Rule 9(b), as applied by the Third Circuit. *Shuker*, 885 F.3d at 778.

Such vague allegations do not put Novo Nordisk on notice of the alleged fraud or misrepresentation at issue and do not suffice to make Plaintiff's claims plausible. These boilerplate allegations do not describe the "who, what, when, where, and how" required to meet Rule 9(b)'s heightened pleading standard. *See U.P.M.C.*, 946 F.3d at 176. As a result, fraud-based and misrepresentation claims (Counts V, VI, VII, VIII) lack the specificity required by Rule 9(b), fail

to place Novo Nordisk on notice of the precise conduct that is at issue, and should be dismissed.

*See Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721 (E.D. Pa. 2013).

## III. Plaintiff's Remaining State-Law Claims Fail Under Arkansas Law.[10]

### A. Plaintiff's Breach of Express and Implied Warranty Claims (Counts III and IV) Fail to Satisfy the Pre-Suit Notice Requirement Under Arkansas Law.

Plaintiff fails to bring viable breach of express and implied warranty claims (Counts III,

IV).  Under Arkansas law, where the plaintiff does not notify the defendant "within a reasonable

time after [s]he discovers or should have discovered any breach," she is "barred from any remedy."

*Adams v. Wacaster Oil Co.*, 98 S.W.3d 832 835 (Ark. App. 2003); *see also* Ark. Code Ann. § 4-

2-607 ("Where a tender has been accepted (a) the buyer must within a reasonable time after he

discovers or should have discovered any breach notify the seller of breach or be barred from any

remedy[.]"); *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 306 (Ark. 1994)

(affirming dismissal of a breach of implied warranty claim for failure to give pre-suit notice).  For

example, in *Murphy v. Wright Medical Technology Inc.*, the court dismissed express and implied

warranty claims where the plaintiff failed to provide pre-suit notice.  No. 21-CV-00002, 2022 WL

947052, at *3 (E.D. Ark. Mar. 29, 2022) (granting dismissal of breach of implied and express

warranties for failure to plead pre-suit notice).

In this case, Plaintiff has not alleged facts to suggest she meets the pre-suit notice

requirement for express and implied warranty claims asserted under Arkansas law.  Ark. Code

---

[10] Novo Nordisk's choice of law analysis is hampered because of pleading omissions in the Complaint—for example, Plaintiff fails to allege where she was prescribed Ozempic®, where she used the medication, and where she was allegedly injured.  Under New Jersey law, the state of injury is presumptively the substantive law that will apply.  *See P.V. v. Camp Jaycee*, 962 A.2d 453, 455 (2008).  However, this presumption yields in certain circumstances.  For present purposes, given the ambiguities in the Complaint, Novo Nordisk analyzes Plaintiff's claims under the law of Arkansas, her state of residence. Compl. ¶¶ 25-27, 491 ("Defendants' negligent testing, monitoring, and pharmacovigilance of Ozempic®, Defendants introduced a drug into the State of Arkansas[.]")

Ann. § 4-2-607(3)(a); *Hufford v. Johnson & Johnson*, No. 22-CV-00196, 2023 WL 3977585, at *2 (E.D. Ark. June 13, 2023) (dismissing express and implied warranty claims for failing to meet the pre-suit requirement); *Howard v. Bayer Corp.*, No. 10-CV-1662, 2011 WL 13224118, at *2 (E.D. Ark. July 22, 2011) (pleading facts about pre-suit notice is essential to any warranty claim); *Hinton*, 714 F. Supp. 3d at 29 (applying Arkansas law). Therefore, dismissal of the breach of express and implied warranty claims (Count III, IV) is appropriate.

### B.    Plaintiff Fails to Allege an Express Warranty (Count III).

Under Arkansas law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *See* Ark. Code Ann. § 4-2-313(1)(a). "Additionally, a necessary element for a breach-of-express-warranty claim is that the party asserting the breach relied on the warranty term[.]" *Madden v. Mercedes-Benz USA, Inc.*, 481 S.W.3d 455, 463 (Ark. App. 2016).

Here, Plaintiff does not identify an express warranty under Arkansas law. Plaintiff alleges in only the most conclusory fashion that Novo Nordisk "expressly represented to Plaintiff and Plaintiff's prescribing physicians that Ozempic was safe as an adjunct to diet and exercise to improve glycemic control and to reduce cardiovascular risks in adults with type 2 diabetes mellitus, and/or to aid in chronic weight management." Compl. ¶ 352. These allegations are not sufficient to maintain a claim for breach of express warranty against Novo Nordisk. As the court explained in *Green*, an express warranty claim should be dismissed where the plaintiff "fails to allege how the representations were false, or even state what was included on the website." *Green v. Bayer Corp.*, 522 F. Supp. 3d 492, 500 (E.D. Ark. 2021). Plaintiff does not point to specific statements or quote an express warranty conveyed by Novo Nordisk upon which she relied. *See Madden*, 481 S.W.3d at 460-61. Plaintiff's claims allude to general reliance on Defendants' statements

regarding the "safe" nature of Ozempic®, yet such generic allegations are insufficient to constitute

a warranty.  FDA has approved Ozempic® as safe and effective; thus, without alleging statements

that have not been previously approved by FDA, Plaintiff's warranty claim fails.

> **C.    Plaintiff's Negligent Misrepresentation Claim (Count VII) Is Not Recognized Under Arkansas Law.**

Plaintiff's negligent misrepresentation claim fails because Arkansas does not recognize a

cause of action for negligent misrepresentation.  *S. Cty., Inc.*, 871 S.W.2d at 326; *see also Curtis

Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 774 (8th Cir. 2010) ("The district court correctly

stated that Arkansas does not recognize a tort of negligent misrepresentation[.]").  Plaintiff's claim

for negligent misrepresentation (Count VII) is thus subject to dismissal under Rule 12(b)(6).

> **D.    The Learned Intermediary Doctrine Forecloses Plaintiff's Failure-to-Warn Claims Premised on a Duty to Warn Plaintiff Directly (Counts I, II, XI, XII)**

Under the learned intermediary doctrine, a manufacturer's duty to warn runs only to the

relevant prescribing physician.  *Kowalski v. Rose Drugs of Dardanelle, Inc.*, 378 S.W.3d 109, 120

(Ark. 2011) ("The physician acts as the 'learned intermediary' between the manufacturer and the

ultimate consumer."); *Boehm*, 2012 WL 12848432, at *3 ("Under settled Arkansas law, the

prescribing physician, not the consumer, is the person who must be warned of a drug's risks."),

*aff'd*, 747 F.3d 501 (8th Cir. 2014) (citing *Hill*, 884 F.2d at 1070) (applying Arkansas law).  "This

duty exists under either . . . negligence or strict liability theories."  *West v. Searle & Co.*, 806

S.W.2d 608, 613 (Ark. 1991).

Although Defendants' duty to warn extended only to Plaintiff's prescribing physician, the

Complaint alleges that Novo Nordisk failed to warn Plaintiff and the public of the alleged risks

associated with Ozempic®.  *See, e.g.*, Compl. ¶¶ 307-309, 340-342.  All of Plaintiff's claims

predicated upon Novo Nordisk's alleged duty to warn Plaintiff directly or the public generally,

rather than solely Plaintiff's prescribing physician, should be dismissed.  *See Stube*, 446 F. Supp.

3d at 440 ("Plaintiffs' claims should be dismissed to the extent that they are premised on Defendant's failure to directly warn [plaintiff], or the general public, of the risks of taking Xeljanz.").

### E.    Plaintiff's Negligent Undertaking Claim Is Not Recognized Under Arkansas Law (Count XII)

Plaintiff brings a negligent undertaking (Count XII) claim, alleging Novo Nordisk "failed to warn consumers in their [direct-to-consumer] advertisements about the true nature and extent of the risks associated with Ozempic."  Compl. ¶ 502.  She asserts that "[n]umerous state laws recognize liability related to the voluntary assumption of a duty or undertaking."  *Id.* ¶ 497.  As alleged, Plaintiff's claim for negligent undertaking is an attempt to plead around the learned intermediary doctrine.  Claims premised on an alleged duty of Novo Nordisk to warn Plaintiff directly, or on a breach of that purported duty, are barred by the learned intermediary doctrine. *See Stube*, 446 F. Supp. 3d at 440 (W.D. Ark. 2020) ("Plaintiffs' claims fail as a matter of law to the extent that they seek to impose on Defendant a duty to directly warn the ultimate drug consumers of the risks of taking Defendant's drugs."); *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016 (8th Cir. 2004) ("[A] warning to the physician is deemed a warning to the patient." (internal quotation marks and brackets omitted)).  Plaintiff has established no separate legal duty to her.[11]  *West*, 806 S.W.2d at 614.  Accordingly, Plaintiff's negligent undertaking claim (Count XII) should be dismissed because Plaintiff's attempt to end-run around the learned intermediary doctrine fails under Arkansas law.

---

[11] Plaintiff cites to *Perez v. Wyeth Laboratories Inc.*, 734 A.2d 1245, 1253 (N.J. 1999), in the Complaint.  *See* Compl. ¶ 499.  However, since Arkansas law appears to apply, *Perez* has no precedential value.  Moreover, *Perez* did not involve allegations of negligent undertaking and is an outlier that many other state courts have declined to follow.  *See, e.g.*, *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 169 (Tex. 2012); *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 950-51 (Ariz. 2016); *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 766 (Ky. 2004).

IV.    **The Complaint Should Be Dismissed to Permit Plaintiff to Clarify Ambiguities That Hinder a Choice of Law Analysis.**

In addition to the numerous pleading failures described above, any amended complaint should plead the location in which Plaintiff received a prescription for Ozempic®, the location where she received medical treatments, and the location of her alleged injury. These details are necessary for Defendants to formulate a responsive pleading.

Rule 12(e) provides that a party may move for a more definite statement if a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific . . . defense." *Thomas v. Indep. Tp.*, 463 F.3d 285, 301 (3d Cir. 2006), *abrogated in part by Pearson v. Callahan*, 555 U.S. 223 (2009) (discussing qualified immunity).

Since the Complaint fails to allege where Plaintiff was prescribed Ozempic®, where she used the medication, and where she was allegedly injured, Novo Nordisk's choice of law analysis is hampered. *See Fahnbulleh v. Trans Union, LLC*, No. 23-CV-21591, 2024 WL 4441754, at *4 (D.N.J. Oct. 7, 2024) (granting a Rule 12(e) motion for a more definite statement where "the unintelligible nature of Plaintiff's Complaint frustrates this Court's ability to determine whether it has jurisdiction"). As explained in *Fahnbulleh*, courts in this Circuit have found that a more definite statement is appropriate "where a complaint's allegations are not specific enough to enable a defendant to determine the propriety of interposing a waivable defense in his or her answer." *Id.* at *3 (internal quotation marks omitted). That is one of Novo Nordisk's concerns here since it is unclear from the Complaint where the relevant events occurred: this case is analogous to *Thomas* because the alleged location of the relevant conduct will assist Novo Nordisk in pleading state-specific affirmative defenses. Another concern is that Novo Nordisk seeks to ensure that choice

of law is correct at the motion-to-dismiss stage to help clarify which claims are not viable as a matter of state law.

Therefore, this Court should order Plaintiff to plead a more definite statement.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that their motion to dismiss Plaintiff's Complaint be granted and that the Court order a more definite statement.

Dated:  April 25, 2025

*/s/ Raymond M. Williams*
Raymond M. Williams (NJ 011282003)
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone: (973) 520-2550
Facsimile: (215) 606-3301
raymond.williams@us.dlapiper.com

Ilana H. Eisenstein (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile: (215) 606-3301
ilana.eisenstein@us.dlapiper.com

Loren H. Brown (admitted *pro hac vice*)
Lucas P. Przymusinski (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4846
Facsimile: (212) 335-4501
loren.brown@us.dlapiper.com
lucas.przymusinski@us.dlapiper.com

Matthew A. Holian (admitted *pro hac vice*)
Katherine W. Insogna (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100
matt.holian@us.dlapiper.com
katie.insogna@us.dlapiper.com

*Attorneys for Defendants*
*Novo Nordisk A/S and Novo Nordisk Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on April 25, 2025, a true and correct copy of the foregoing Defendants Novo Nordisk A/S and Novo Nordisk Inc.'s Motion to Dismiss Plaintiff's Complaint and Motion for a More Definite Statement was electronically filed using the Court's CM/ECF system, causing notification of the filing to all counsel of record.

*/s/ Raymond M. Williams*
Raymond M. Williams
